**William D. JACKSON, Plaintiff,**

v.

**LYONS FALLS PULP & PAPER, INC., Defendant.**

**No. 91–CV–0252.**

United States District Court, N.D. New York.

Sept. 7, 1994.

90

Durr & Riley, Boonville, NY (Raymond D. Durr, counsel), for plaintiff.

Bond Schoeneck & King, Syracuse, NY (Thomas G. Eron, of counsel), for defendant.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Senior District Judge.

This action arises under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34, and the New York common law. In his complaint, plaintiff William D. Jackson alleges that he was dismissed as an employee of defendant Lyons Falls Pulp & Paper, Inc. as a result of age discrimination, that he was retaliated against for filing a civil rights claim, and that his discharge breached an implied employment contract. Currently before the court is defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the reasons stated below, defendant's motion is granted.

## BACKGROUND

Plaintiff, a 54 year old male, filed a complaint on March 6, 1991, alleging that defendant Lyons Falls Pulp & Paper, Inc., discharged and retaliated against him in violation of the ADEA, and that defendant breached an implied employment contract. All allegations arise out of a common set of facts.

Plaintiff began his employment at the Lyons Falls, New York papermill in October 1957, when the mill was owned by Gould Paper Company. Lacking any specialized education, plaintiff worked various jobs for an hourly wage at the mill before he was promoted to a salaried position as Stock Preparation Supervisor in 1971, when Georgia Pacific Corporation owned the mill. As Stock Preparation Supervisor, plaintiff was responsible for maintaining an inventory of raw materials and for overseeing the production of stock, from which paper is made. After defendant acquired Georgia Pacific's interest in the papermill in October, 1985, it retained the managerial and supervisory employees, including plaintiff. Plaintiff retained the title of Stock Preparation Supervisor until he was terminated on October 1, 1990.

Defendant specializes in producing paper used for book publishing. In July 1989, defendant began to convert the Lyons Falls plant to facilitate the manufacture of paper

using an alkaline-based process. Until that time, the plant was equipped to produce paper only using an acid-based process. Defendant undertook this conversion in response to the demands of the publishing market, in which alkaline paper is generally preferred because it is more durable and less likely to yellow with age than acid paper.

When the mill converted from acid to alkaline production, new paper recipes, new equipment, and different control measures were utilized. The initial conversion resulted in significant losses for defendant. Because most of the employees lacked any experience in alkaline paper production, several managers and supervisors were replaced with people who did have such experience. Kenneth Noonan was hired by defendant as Production Manager in May 1990. Noonan was eventually given the title of General Manager.

The conversion to alkaline production required significant adjustments for plaintiff. As Stock Preparation Supervisor, plaintiff played a pivotal role in the mill's conversion. Plaintiff was assigned significant new duties by Noonan. One such duty involved providing daily reports detailing, among other things, the rate of consumption of raw materials. Another duty required plaintiff to instruct the twenty employees under his supervision to measure and chart certain qualities of the stock in an effort to streamline production, thus controlling costs.

According to defendant, plaintiff was unable to fulfill his new duties. On October 1, 1990, plaintiff was informed by Noonan and Ernest Colella, the Personnel Manager, that he was discharged because of technological changes. Noonan and Colella presented plaintiff with a Separation Agreement releasing the company from any liabilities relating to his discharge, and offered plaintiff severance pay and benefits in return for his signature on the Agreement. Plaintiff refused the offer and therefore did not receive the severance pay and benefits. Fritz Stahl, a younger employee with less experience, replaced plaintiff as Stock Preparation Supervisor.

*DISCUSSION*

A. *Standards for Summary Judgment*

Under Federal Rule of Civil Procedure 56(c) summary judgment shall enter if, when viewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Technical Servs., Inc.,* —— U.S. ——, ——, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Commander Oil v. Advance Food Serv. Equip.,* 991 F.2d 49, 51 (2d Cir.1993). Where the moving party does not bear the ultimate burden of proof on an issue, that party satisfies its summary judgment burden by pointing to the absence of evidence to support an essential element of the non-moving party's claim. *Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 572 (2d Cir.1993). Where the movant does shoulder the burden of proof, it must establish that there is no genuine issue of material fact to be decided regarding any element of that party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In either case, if the movant satisfies its initial summary judgment burden, then the burden shifts to the non-movant to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists. *Weg v. Macciarola,* 995 F.2d 15, 18 (2d Cir.1993). To survive the motion for summary judgment the nonmovant must do more than present evidence that is merely colorable, conclusory, or speculative, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986), and furthermore must show more than "some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmovant must demonstrate that there are issues of fact that must be decided by a factfinder, because "they may reasonably be decided in favor of either party." *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990).

With these rules in mind, the court turns to the specific arguments raised on defendant's motion.

## B. *ADEA Claims*

Defendant's motion for summary judgment with regard to plaintiff's claims under the ADEA is twofold. First, defendant challenges the court's jurisdiction to hear the matter. Second, defendant argues that even if the court has jurisdiction, summary judgment is appropriate because plaintiff fails on the merits of his claims.

### 1. Jurisdiction

The court first turns to defendant's argument that the court lacks subject matter jurisdiction to hear plaintiff's ADEA claims. In relevant part, 29 U.S.C. § 633(b) states:

In the case of an alleged unlawful practice occurring in a state which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under § 626 of this title before the expiration of sixty days after proceedings have been commenced under the state law, unless such proceedings have been earlier terminated.

■ There are two requirements that an ADEA claimant must meet before filing an action in federal court. First, claimant must timely file a charge with the Equal Employment Opportunity Commission ("EEOC"). *Wanamaker v. Columbian Rope Co.*, 713 F.Supp. 533, 540 (N.D.N.Y.1989). Second, claimant must have commenced a state proceeding with the relevant state agency pursuant to 29 U.S.C. § 633(b). *Id.*

In the instant case, it is undisputed that plaintiff filed a timely EEOC charge, satisfying the first prerequisite. Exhibit ("Exh.") C attached to Plaintiff's Memorandum of Law, Document ("Doc.") 21. The parties do, however, dispute whether plaintiff commenced a proceeding with the New York State Division of Human Rights ("SDHR").

■ It is well established that under § 633(b) of the ADEA resort to administrative remedies is mandatory. *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 758, 99 S.Ct. 2066, 2072–73, 60 L.Ed.2d 609 (1979); *Reich-*

*man v. Bonsignore*, 818 F.2d 278, 282 (2d Cir.1987). Section 633(b) does not stipulate an exhaustion requirement but rather requires only that state proceedings be commenced, thus giving the state agency "a limited opportunity to settle the grievances of ADEA claimants in a voluntary and localized manner so that the grievant thereafter have no need or desire for independent federal relief." *Solimino v. Astoria Fed. Savings & Loan Ass'n*, 901 F.2d 1148, 1151 (2d Cir. 1990) (citing *Oscar Mayer*, 441 U.S. at 761, 99 S.Ct. at 2074). A state proceeding is deemed commenced for purposes of § 633(b) when the complaint is filed. *Oscar Mayer*, 441 U.S. at 760, 99 S.Ct. at 2073.

■ Defendant asserts that plaintiff failed to commence state proceedings because he never filed a formal complaint with the SDHR. Plaintiff responds that the EEOC, acting pursuant to a work-sharing agreement and plaintiff's authorization, sent a transmittal letter to SDHR indicating its intention to initiate investigation and conciliation. *See* Letter, Exh. C attached to Doc. 21. With that letter the EEOC sent a copy of plaintiff's charge to be filed with SDHR. *Id.* The Federal Contact Unit of SDHR, which oversees receipt of all complaints filed with the EEOC, received a copy of plaintiff's charge on November 26, 1990.[1] Under 29 C.F.R. § 1626.10(c), "charges received by one agency under the [work sharing] agreement shall be deemed received by the other agency for purposes of § 1626.7 [timeliness of charge]." Thus, filing a charge with the EEOC, which is forwarded to SDHR, is sufficient to commence a state proceeding for purposes of § 633(b). *Wanamaker*, 713 F.Supp. at 542 (N.D.N.Y.1989); *Kaczor v. City of Buffalo*, 657 F.Supp. 441, 445 (W.D.N.Y.1987). As plaintiff timely filed a charge with the EEOC, which in turn forwarded the charge to SDHR, plaintiff has commenced state proceedings within the meaning of § 633(b). Further, plaintiff did not bring the suit until March 1991, more than 60 days after the charge was filed. Thus, plaintiff has satisfied the statutory pre-

---

1. This court sua sponte contacted the Federal Contact Unit, New York City Office of the State Division of Human Rights and obtained this information.

requisites for commencing a civil action under the ADEA. Therefore the court holds that it has subject matter jurisdiction over plaintiff's ADEA claims and turns to defendant's motion for summary judgment on the merits.

### 2. McDonnell Douglas Test

■ The ADEA provides that it is "unlawful for an employer to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The legal standard to be applied to suits under the ADEA is the well known three-step analysis for Title VII cases established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), clarified in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and further refined in *St. Mary's Honor Center v. Hicks*, — U.S. —, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The *McDonnell Douglas* analysis sets forth a burden shifting scheme in which plaintiff ultimately bears the burden of proving discriminatory intent on the part of defendant.

■ The first phase of the analysis requires the plaintiff to prove by a preponderance of the evidence a prima facie case of discrimination. To establish a prima facie case of discriminatory discharge, plaintiff must show that: 1) he was within the protected age group; 2) he was qualified for the job; 3) he was discharged; and 4) the discharge occurred under circumstances giving rise to an inference of age discrimination. *Spence v. Maryland Casualty Co.*, 995 F.2d 1147, 1155 (2d Cir.1993). To establish a prima facie case of retaliation, plaintiff must show that: 1) he was engaged in a protected activity; 2) the employer was aware of that activity; 3) there occurred an employment activity adverse to the employee; and 4) there existed a causal connection between the protected activity and the adverse employment action. *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 83 (2d Cir.1990).

■ If a prima facie case is established, a presumption is created that the employer unlawfully discriminated against the employee and the court proceeds to the second phase of the analysis, in which the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for its actions. *Hollander*, 895 F.2d at 83. Defendant bears only the burden of production and need not persuade the court that it was actually motivated by the proffered reason, as the burden of persuasion remains with the plaintiff at all times. *Cosgrove v. Sears Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir.1993); *DiCola v. SwissRe Holding, Inc.*, 996 F.2d 30, 32 (2d Cir.1993). To rebut the presumption created by plaintiff's prima facie case, it is sufficient that defendant produces admissible evidence legally sufficient to justify a judgment in its favor. *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094–95.

■ If the defendant carries this burden of production and thus rebuts the presumption raised by plaintiff's prima facie case, the court reaches the third and final phase of the analysis. At this stage, the *McDonnell Douglas* framework becomes irrelevant. *Cosgrove*, 9 F.3d at 1039 (citing *Hicks*, — U.S. at —, —, 113 S.Ct. at 2747, 2749). Plaintiff must demonstrate that the proffered reason was not the true reason for the discharge but a pretext for discrimination. *Burdine*, 450 U.S. at 255–56, 101 S.Ct. at 1094–95.

Having set forth the proper analytic framework, the court turns to defendant's motion for summary judgment on plaintiff's unlawful discharge and retaliation claims.

#### i. Retaliation

##### a. Prima Facie case

■ In order to establish a prima facie case of unlawful retaliation, plaintiff must show that: 1) he was engaged in a protected activity; 2) defendant was aware of the protected activity; 3) adverse action was taken by defendant against plaintiff; and 4) there existed a causal connection between the protected activity and the adverse employment action. *Hollander*, 895 F.2d at 85.

In the instant case, plaintiff alleges that plaintiff's discharge and defendant's denial of

severance pay and benefits was a direct result of plaintiff's filing of a charge of discrimination with the EEOC. Because defendant does not dispute that plaintiff has met the first two requirements of his prima facie case, the court focuses on the third and fourth elements.

■ Viewing the evidence in a light most favorable to his claim, plaintiff's assertion that his discharge was retaliatory lacks foundation. It is undisputed that plaintiff was already terminated before he was asked to sign a separation agreement or filed his EEOC charge. The requisite causal connection for retaliation claims may be established only if the protected activity preceded the claimed retaliation. *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir.1980); *Cronin v. ITT Corp.*, 737 F.Supp. 224, 230 (S.D.N.Y.1990). Therefore, plaintiff's claim of retaliatory discharge is without merit.

■ Plaintiff's contention that defendant retaliated against him by refusing to grant benefits and severance pay also fails in light of the evidence. Under the Separation Agreement, plaintiff would receive severance payments and benefits in return for his signature. *See* Separation Agreement, Exh. A, attached to Doc. 9. Because plaintiff was not otherwise entitled to receive severance pay and benefits, the award of severance pay and benefits was a privilege rather than a right. As such, defendant's refusal to supply plaintiff with severance pay and benefits can not be characterized as an adverse action. Instead, defendant merely declined to enlarge plaintiff's rights to compensation. Such a decision does not form the basis of a retaliation claim. *See Cronin*, 737 F.Supp. at 231 (granting summary judgment on retaliation claim where defendant's refusal to pay severance to which plaintiff not legally entitled was based on plaintiff's refusal to sign a release).

Defendant has demonstrated that there is no genuine issue of fact concerning a causal connection between plaintiff's charge of age discrimination and any subsequent punitive action taken toward plaintiff by defendant. Because plaintiff can not establish a prima facie case of retaliation, the court grants summary judgment on plaintiff's retaliation claim.

ii. Unlawful Discharge
 a. Plaintiff's Prima Facie Case

In order for plaintiff to establish a prima facie case of unlawful discharge, plaintiff must show that: 1) he was within the protected age group; 2) he was qualified for the job; 3) he was discharged; and 4) the discharge occurred under circumstances giving rise to an inference of age discrimination. *Spence*, 995 F.2d at 1155. It is undisputed that plaintiff has satisfied the first and third elements, and the court therefore focuses on the second and fourth elements to determine whether plaintiff has established a prima facie case.

■ The nature of plaintiff's burden of proof at the prima facie stage is de minimus. *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988). In establishing a prima facie case, courts have recognized that the *McDonnell Douglas* standard is not inflexible, and that the " 'central question is whether plaintiff has presented sufficient evidence to permit a reasonable fact-finder to conclude that age was a determinative factor in the employer's decision.' " *Montana v. First Fed. Savings & Loan of Rochester*, 869 F.2d 100, 104 (2d Cir.1989) (quoting *Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 81 (2d Cir.1983)).

■ Applying these minimal standards to the second and third elements of plaintiff's prima facie case, the court finds that plaintiff has met his burdens. Defendant argues that plaintiff fails to meet the second element because plaintiff was not qualified for the job as it existed in 1990. While defendant concedes that plaintiff filled the Supervisor position for 33 years, it argues that the duties of the position substantially changed when the company converted to an alkaline-based process, and that plaintiff was no longer qualified for the job. However, plaintiff "need only demonstrate that he 'possesses the basic skills necessary for the performance of [the] job,' " as the *McDonnell Douglas* analysis requires only a minimal showing of qualification to establish

a prima facie claim. *Owens v. New York City Housing Auth.*, 934 F.2d 405, 409 (2d Cir.1991) (quoting *Powell v. Syracuse Univ.*, 580 F.2d 1150, 1155 (2d Cir.), *cert. denied*, 439 U.S. 984, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978)). In the instant case, plaintiff had been employed at the papermill for 33 years, of which nineteen were spent working as the Stock Preparation Supervisor. Jackson Deposition, Doc. 13, at 8, 11. As Stock Preparation Supervisor, plaintiff was primarily responsible for maintaining the inventory of raw materials and supervising approximately twenty employees who operated the paper manufacturing machinery. Jackson Affidavit, Doc. 19, at ¶ 2. Plaintiff's supervisory duties required an in-depth knowledge of the ingredients and chemistry of a paper recipe. Jackson Affidavit, Doc. 19, at ¶ 2; Noonan Affidavit, Doc. 7, at ¶¶ 4, 5. For many years prior to the arrival of the new management, plaintiff was one of only four individuals who was given complete responsibility for managing the operations of the company and the paper mill. Jackson Deposition, Doc. 14, at 39; Jackson Affidavit, Doc. 19, at ¶ 29. When defendant acquired the mill in October 1, 1985 it retained plaintiff as Stock Preparation Supervisor. Szmit Affidavit, Doc. 8, at ¶ 4. It was not until July 1989 that defendant converted the mill from an acid to an alkaline-based papermaking process. *Id.* at 10. According to Ervin Sullivan, the former Electrical Supervisor for defendant, plaintiff actively participated in the conversion as plaintiff was "the person solely running stock preparation." Sullivan Affidavit, Doc. 27, at ¶ 5. Also, to keep abreast of the changes caused by the transition to alkaline, plaintiff attended training courses and seminars. Jackson Affidavit, Doc. 19, at ¶ 3. Plaintiff's years of relevant work experience alone are sufficient to demonstrate that he had the minimum basic skills necessary to perform his job.

The final element of a prima facie case requires the plaintiff to establish that there are circumstances surrounding his discharge that give rise to an inference of age discrimination. In this regard, plaintiff directs the court to the fact that he was replaced by a younger employee, Fritz Stahl, who admits "by experience, I was not as qualified as William Jackson to manage this [stock preparation] department." Stahl Affidavit at ¶ 4. Although plaintiff had been demoted, Stahl instructed plaintiff to "continue his duties as in the past" because he "was qualified to supervise the stock preparation department." *Id.* at 5. Furthermore, plaintiff notes that he never received written notice that his job performance was unsatisfactory. Jackson Affidavit, Doc. 19, at ¶ 13. Kenneth Noonan, the General Manager, also admits that he never had a problem with plaintiff's reliability as a hard worker. Noonan Deposition, Doc. 12, at 23. Plaintiff continually received annual pay increases. Jackson Deposition, Doc. 13, at 38; Jackson Affidavit, Doc. 19, at ¶ 13; Colella Affidavit, attached to Doc. 9, at ¶ 4. Judged in a light most favorable to plaintiff, these circumstances would permit a reasonable jury to infer that plaintiff was discharged as a result of age discrimination.

The court therefore finds that plaintiff has proffered sufficient evidence to establish a prima facie case of discriminatory discharge. A presumption arises that defendant unlawfully discriminated against plaintiff. *Hicks*, —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).

b. Defendant's Nondiscriminatory Purpose

 To rebut that presumption, defendant must articulate a legitimate, nondiscriminatory reason for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of plaintiff's termination. *Id.* (citing *Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1094–95).

In the case at bar, defendant has clearly set forth a legitimate nondiscriminatory reason for plaintiff's discharge. According to defendant, the duties of the Stock Preparation Supervisor had expanded but plaintiff failed to keep pace with the swiftly changing work environment. Noonan Affidavit, Doc. 7, at ¶ 21. Defendant posits that plaintiff simply did not adjust to the technological changes necessitated by the conversion from an acid to an alkaline-based papermaking process. Noonan Affidavit, Doc. 7, at ¶ 15. Technologically, he was ill prepared to understand the complex chemistry of alkaline

papermaking, which requires more careful monitoring and detailed adjustments than acid papermaking. Noonan Affidavit, Doc. 7, at ¶ 14. Defendant also states that plaintiff was unable to handle the additional supervisory duties imposed by the new management as part of the conversion. Noonan Deposition, Doc. 12, at 14–15.

It is important to note that the court need not assess the logic of defendant's proffered reason for firing plaintiff, for defendant's reason need not be a good one. It may be a "bad reason, a reason based on erroneous facts, or … no reason at all, as long as its actions is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187, *reh'g denied en banc,* 747 F.2d 710 (11th Cir.1984). Further, "defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094–95. Even viewing the evidence most favorably to plaintiff, defendant clearly has articulated a legitimate, nondiscriminatory reason for plaintiff's discharge and has therefore rebutted the presumption of unlawful discrimination.

### c. Defendant's Evidence of Pretext

Because defendant has rebutted the inference of discrimination caused by plaintiff's prima facie case, the presumption of unlawful discrimination disappears and plaintiff must go forward to prove the ultimate issue of his ADEA claim. *Cosgrove,* 9 F.3d at 1038 (2d Cir.1993) (citing *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94). At this stage of the *McDonnell Douglas* analysis, plaintiff is obliged to prove by a preponderance of the evidence that defendant discriminated against him because of his age. *Hicks,* — U.S. at ——, 113 S.Ct. at 2753. This may be demonstrated by reliance on the evidence that established his prima facie case, without any additional evidence being required, *see Hicks,* — U.S. at ——, 113 S.Ct. at 2749, or by presentation of additional evidence to show that defendant's reasons for his discharge were false. *Gallo v. Pruden-*

*tial Residential Servs.,* 22 F.3d 1219, 1226 (2d Cir.1994) (citing *Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 142 (2d Cir. 1993).

The court distills several arguments from plaintiff's disjointed presentation. Even viewed in a light most favorable to plaintiff, however, his proffered evidence is insufficient to defeat defendant's motion for summary judgment.

First, plaintiff argues that his replacement by younger, less experienced employees indicates that defendant's stated reason for dismissing him is merely a pretext for discrimination. However, the record reflects that although Fritz Stahl, plaintiff's immediate successor, may have had less experience in working in the Stock Preparation Department, his baccalaureate degree in Paper Science gave him a superior technical background with which to manage the stock preparation area under the alkaline process. Noonan Affidavit, Doc. 7, at ¶ 23. Furthermore, Stahl's successor had similar qualifications. *Id.* at ¶ 27. The educational background of both Fritz Stahl and his successor supports, rather than weakens, defendant's claim that the reason for plaintiff's discharge was plaintiff's lack of technological education and expertise.

Second, plaintiff claims that defendant should have found plaintiff another salaried position as it has with other salaried employees in the past. While it is true that an employer may not consciously refuse to relocate an employee because of his age, plaintiff must establish that he was qualified to assume another available position at the time of discharge. *Maresco v. Evans Chemetics,* 964 F.2d 106, 111 (2d Cir.1992). Defendant claims that its search to find plaintiff another salaried position was fruitless as there was no available position for which plaintiff was qualified. Noonan Affidavit, Doc. 7, at ¶ 24. Plaintiff counters that he was qualified for the position of Tour Foreman and that he should have been offered that position, yet plaintiff admits that the two positions of Tour Foreman were already filled at the time of his termination. Jackson Deposition, Doc. 14, at 83–84. Plaintiff's con-

tradictory assertions do not suffice to create a genuine issue of fact concerning the availability of an alternative position, for plaintiff fails to identify any position for which he was qualified that defendant could have given him.

Third, plaintiff claims that defendant's failure to train plaintiff to adjust to the technological changes constituted blatant disregard of plaintiff's age and long-term service. The ADEA, however, "does not require an employer to accord special treatment to employees over forty years of age." *Parcinski v. Outlet Company*, 673 F.2d 34, 37 (2d Cir.1982) (citing *Williams v. General Motors Corp.*, 656 F.2d 120, 129 (5th Cir. 1981)). The ADEA instead requires that employees over 40 be treated in a "neutral fashion, neither facilitating nor hindering advancement, demotion, or discharge." *Id.* Thus, the mere fact of plaintiff's advanced age did not impose a legal duty on defendant to train plaintiff to adapt to a position with significantly altered duties.

Fourth, plaintiff argues that defendant was at least obligated to provide training as set forth in its operating policies. However, plaintiff refers only to the operating policy of Georgia Pacific Corporation, the previous owner of the mill. *See* Policy Manual, Doc. 15, Part 2. Defendant did not adopt its predecessor's written policies and therefore was not bound by their terms. Szmit Affidavit, Doc. 8, at ¶¶ 5, 6, 7, 8.

Finally, plaintiff argues that his unexpected termination without any written warning tends to show that defendant's actual reason for terminating plaintiff was discriminatory. However, defendant has no written agreement or policy manual which requires written warnings. *Id.* at ¶ 6. Although plaintiff did not receive any written notice of poor performance, plaintiff admits that Noonan repeatedly apprised plaintiff verbally that his management of the Stock Preparation Department was unsatisfactory. Jackson Affidavit, Doc. 19, at ¶¶ 12, 13.

There is no genuine issue of fact concerning plaintiff's inability to fulfill the newly expanded duties of the supervisor position. Plaintiff's own statements support defendant's conclusion that plaintiff was unable to handle the changes occurring within the company. Plaintiff admits that he told Noonan that his job required additional assistance because there was too much work for one person and that he was overloaded. Jackson Deposition, Doc. 13, at 132–33. The evidence also demonstrates plaintiff's inability to adapt technologically. For instance, plaintiff does not deny that he failed to control additives such as carbonate, resulting in paper that developed holes and bubbles. Noonan Affidavit, Doc. 7, at ¶ 8. Plaintiff's failure to understand the differences between the acid-based and alkaline-based papermaking techniques is reflected by his statement that "the alkaline process conversion required no real major changes in equipment in this papermill, ... nothing changed here," Jackson Affidavit, Doc. 19, at ¶ 5, when it is undisputed that new and more complicated equipment had been installed including a computer system used to monitor flow rates under the new continuous blending process. Noonan Affidavit, Doc. 7, at ¶ 16.

Further, plaintiff does not dispute that he made several important errors prior to being discharged. For instance, plaintiff was required to report on the amounts of raw materials actually used and to compare those amounts to the standard amounts that should have been used according to the recipe for the type of paper run on a given day. He was to detail any variation, assess the reasons for the variation, and describe the corrective steps taken. *Id.* at ¶ 12. Plaintiff does not dispute that he failed to provide this information for one month and that when he finally did so, that he provided it for some but not for all of the raw materials. *Id.* Plaintiff also does not dispute that he failed on a regular basis to require the stock preparation production employees under his supervision to measure and chart certain qualities of the stock, such as color, size, or freeness under the trend charting and statistical process control systems instituted by defendant to monitor and control production. *Id.* at ¶ 10.

In short, plaintiff's argument rises merely to the level of speculation and innuendo, as he fails to produce any concrete evidence linking his dismissal to his age. Defendant

has successfully fulfilled its summary judgment burden on plaintiff's unlawful discharge claim, in that it has shown that there are no genuine issues of material fact as to whether plaintiff was discharged for discriminatory reasons. Viewing the evidence in a light most favorable to plaintiff, the courts holds that it is insufficient as a matter of law to support a verdict in plaintiff's favor on the issue of discriminatory discharge. Therefore, the court grants defendant's motion for summary judgment on plaintiff's unlawful discharge claim.

## C. *Breach of Implied Contract Claim*

In his third cause of action, plaintiff alleges that defendant breached an implied contract by dismissing him in bad faith. It is well established in New York that absent an agreement establishing a fixed duration, employment by a private employer is presumed to be at will, and terminable at any time by either party. *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 333, 506 N.E.2d 919, 920, 514 N.Y.S.2d 209, 211 (1987); *Doynow v. Nynex Publishing Co.*, 202 A.D.2d 388, 388, 608 N.Y.S.2d 683, 684 (2d Dep't 1994). Where an employee is retained at-will, no obligation of good faith or fair dealing attaches to the employment relationship, as such an obligation "would be incongruous to the legally recognized jural relationship in [an at-will] relationship." *Ingle v. Glamore*, 73 N.Y.2d 183, 188, 535 N.E.2d 1311, 1313, 538 N.Y.S.2d 771, 773 (1989).

Because the record is devoid of evidence indicating an agreement to employ plaintiff for a fixed duration, a presumption arises that plaintiff was employed at-will. To rebut this presumption, plaintiff maintains that he was given oral and written assurances of continued employment. According to plaintiff, when defendant acquired the papermill, Frederick A. Szmit, the company President, assured employees including plaintiff that they would have continued employment and that the papermill would continue as it has in the past. Jackson Affidavit, Doc. 19, at ¶ 30. Plaintiff interpreted this to mean that the policies of Georgia Pacific would also be adopted by defendant. Specifically, plaintiff relied on the Georgia Pacific

Operating Policies which set forth the terms and conditions of employment. *See* Policy Manual, Doc. 15, Part 2.

Plaintiff's arguments are insufficient to create a material issue of fact as to his at-will employment status. Taking plaintiff's account of Szmit's statement as true, no fixed duration of employment was specified. Thus Szmit's alleged promise can not be said to have converted plaintiff from at-will to a term-of-years employee. Further, defendant steadfastly denies that it maintains any formal employment policy, and categorically avers that it never adopted the written operating processes of Georgia Pacific. Szmit Affidavit, Doc. 8, at ¶ 3; Colella Affidavit, Doc. 9, at ¶ 3. The court agrees that plaintiff's interpretation of Szmit's alleged statement is strained at best, and that defendant can not be held to the standards contained in Georgia Pacific's Policy Manual.

Nonetheless, even if defendant had adopted the policies of Georgia Pacific, plaintiff's reliance on the Georgia Pacific's Operating Policies Manual is misguided. Under the section entitled "Termination of Employment—Salaried Employees," the manual states that "the employment and compensation of any employee can be terminated, with or without cause, at any time, at the option of the employee or at the option of the company." Policy Manual, Doc. 15, Part 2, at 20. Clearly this describes an at-will employment relationship.

Because there was no agreement establishing a fixed duration of employment, plaintiff was an at-will employee and defendant had the right to discharge him at will. Therefore, defendant's motion for summary judgment with regard to plaintiff's contract claim is granted.

## D. *Sanctions under Rule 11*

Finally, defendant moves for an award of sanctions pursuant to Fed.R.Civ.P. 11, arguing that plaintiff's retaliation and contract claims are frivolous. Rule 11 is violated only when it is "patently clear that a claim has absolutely no chance of success." *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir.1986). The court holds that plaintiff's

submissions were not frivolous under the *Oliveri* standard. Therefore the court denies defendant's motion for sanctions under Rule 11.

### CONCLUSION

In sum, defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56(c) is granted. Defendant's motion for sanctions pursuant to Fed.R.Civ.P. 11 is denied. The Clerk of the Court is directed to enter judgment in favor of defendant Lyons Falls Pulp & Paper, Inc., dismissing this action in its entirety.

It is So Ordered.