**Jeffrey EYMER and Patrick Lappin, Plaintiffs,**

v.

**The GROUND ROUND, INC. and The Ground Round, Inc. Severance Pay Plan, Defendants.**

No. 93–CV–785 (FJS)(GJD).

United States District Court, N.D. New York.

Feb. 12, 1996.

Greene, Hershdorfer & Sharpe, Syracuse, NY (Beth A. Brownson, of counsel), for plaintiffs.

Hogan & Hartson, Washington, DC (John F. Dienelt, of counsel), for defendants.

## DECISION AND ORDER

SCULLIN, District Judge.

### INTRODUCTION

This action involves claims brought pursuant to the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B), as well as breach of contract claims, and an age discrimination claim

brought pursuant to N.Y.Exec.Law § 296. More specifically, plaintiffs' ERISA claims are based upon the alleged failure of the defendants, The Ground Round, Inc. ("The Company") and The Ground Round, Inc., Severance Pay Plan ("The Plan"), to award them severance pay following their dismissals.[1]

Plaintiffs also assert breach of contract claims against the defendant, The Ground Round, Inc., alleging that they had contracts wherein the defendant agreed to pay them accumulated vacation pay upon their termination and that no such payments were made following their dismissals.[2] Plaintiff, Jeffrey Eymer, also asserts a claim of age discrimination against the defendants pursuant to N.Y.Exec.Law § 296.

Presently before the Court is defendants' motion for partial summary judgment as to Claims 1, 3, 5, 6, 7, 8, 9 & 10 of the Complaint. The Court heard oral argument on this motion at its November 3, 1995, Motion Calendar, at which time it granted the motion with respect to Claims 3 and 8, and reserved decision on the remaining claims. Following oral argument each party submitted supplemental briefing at the request of the Court.

## BACKGROUND

Plaintiff, Jeffrey Eymer, was employed by the defendant, The Ground Round, Inc., for 15 years and was a Vice President of Division Operations at the time of his termination. Plaintiff, Patrick Lappin, was employed by the defendant for 12 years, and was a Regional Director at the time of his termination. The defendant, The Ground Round, Inc., owns and operates full service, dine-in restaurants, throughout the country.

In September 1986 both plaintiffs were issued a copy of The Ground Round's policy on "Business Ethics and Conflict of Interest." This policy states that a conflict of interest may occur where

an employee, directly or indirectly, [owns or has] and ownership interest in any business, firm, corporation or other organization which is in direct or indirect competition with the business conducted by the Company.

It is believed that the company's policies as set out are already well understood by all company personnel, but they are restated at this time as a reminder that undisclosed acts or conditions in conflict with the interests as above described shall be deemed sufficient grounds for dismissal of the individual involved.

Def.Mem.Ex. 1 p. 4. Both plaintiffs signed an "Acknowledgement of Receipt and Compliance" soon after receiving a copy of the policy. This was the only copy of the policy that was issued to, and signed by, the plaintiffs prior to their dismissals.

In 1989 each plaintiff invested $7,500.00 in a Subway sandwich shop. Although neither plaintiff was involved in the control or management of the business of the shop, they each maintained a 25% ownership interest in the franchise. In March 1990 plaintiffs began to extricate themselves from their involvement in the Subway franchise, and in August 1990 obtained a hold harmless agreement from the person who operated the shop. Eymer Aff.Ex. A. Plaintiffs ultimately sold their interests in the Subway franchise in May 1991. *Id.* Ex. C.

In October 1991, both plaintiffs were dismissed from their positions with The Ground Round, Inc. by then-President Michael O'Donnell. According to O'Donnell, both plaintiffs were dismissed for violating the Company's "Business Ethics and Conflict of Interest Policy." The violation at issue was the plaintiffs' ownership interest in the Subway franchise.

In April 1993, each plaintiff submitted a written request for severance pay which they claimed they were entitled to under The

---

1. Plaintiffs' also seek attorneys' fees under ERISA. 29 U.S.C. § 1132.

2. Plaintiff Eymer also asserts a breach of contract claim for the defendants alleged failure to

pay him an incentive bonus from 1990. Defendants do not seek summary judgment as to this claim.

Ground Round, Inc. Severance Pay Plan.[3] On July 20, 1993, the Plan Administrator denied each plaintiffs request in writing. Def.Mem.Exs. 8–9. On August 18, 1993, both plaintiffs requested a further review of the Administrator's decision to deny them severance pay. After submitting their request for a review of the decision, plaintiffs submitted arguments as to why they believed that they were entitled to severance benefits under the Plan. *Id.* Ex. 5. On January 24, 1994, the Plan Administrator notified both plaintiffs that their appeals had been denied. *Id.* Ex. 11.

## DISCUSSION

### Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is warranted if, when viewing the evidence in the light most favorable to the non-movant, the court determines that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Commander Oil v. Advance Food Serv. Equip.*, 991 F.2d 49, 51 (2d Cir.1993). The burden of showing that no genuine issue of material fact exists rests on the moving party. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). Where the moving party does not bear the ultimate burden of proof at trial, the summary judgment burden may be satisfied by pointing out the absence of evidence to support the non-movant's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the movant shows the absence of such evidence, the burden of persuasion shifts to the non-movant to show that the record contains sufficient evidence to establish each element of its case. *Id.*, at 322, 106 S.Ct. at 2552.

### I. CLAIMS 1 & 7—ERISA—SEVERANCE PAY

Plaintiffs' initial claims assert that the Company has violated the requirements of ERISA by refusing to award them severance benefits following their terminations. 29 U.S.C. § 1132(a)(1)(B).

### a. Standard of Review

The threshold question for the Court is what is the appropriate standard to be applied in reviewing a denial of benefits under ERISA. The Supreme Court has clearly stated that

> a denial of benefits challenged under § 1132(a)(1)(B) [of ERISA] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe terms of the plan.

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). In accordance with this standard, the Second Circuit has held that "where the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is *'arbitrary and capricious.'*" *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir.1995) (emphasis added).

In the case at bar, plaintiffs argue that the Court should review the Administrator's denial de novo because the Company was the actual Plan Administrator and, as such, it did not use its discretion, i.e. construe any terms of the Plan, in denying their claims for benefits. They base this argument on the fact that when he terminated them, the President of the Company, Michael O'Donnell, made the determination that plaintiffs had violated Company policy and that they, therefore, were not entitled to severance benefits. Pl. Mem. p. 15. According to plaintiffs, Ann Verano, the employee responsible for overseeing the Plan for the Company, did not take any steps to exercise the discretionary authority granted to the Plan Administrator. Plaintiffs argue that, in fact, Ms. Verano had no real discretion to grant their requests

---

3. Plaintiffs claimed that they were entitled to one-half month's pay for each full year of service they had with the company. Accordingly, plaintiff Eymer requested $57,812.50 in severance and plaintiff Lappin requested $30,179.50. Complaint ¶¶ 13 & 50.

because the President, on behalf of the Company, had already decided that they were not entitled to severance benefits.

■ Even if plaintiffs are correct in their assertion that Ms. Verano did not actually exercise any discretion, the fact that the Plan specifically gives the Administrator total discretion over the awarding of benefits, whether or not used, prevents the Court from applying the de novo standard of review. The Plan states that "[t]he Plan Administrator has the sole authority to determine eligibility for benefits under the Plan and to construe or interpret the terms of the Plan." Def.Mem.Ex. 13 p. 5. Accordingly, the Administrator had discretion over the determination of plaintiffs' eligibility, whether or not it used that discretion, and, therefore, the Court must apply the "arbitrary and capricious" standard of review. *Pagan,* 52 F.3d at 441; *Amond v. Syracuse China Corp.,* 1993 WL 476490, *2–3 (N.D.N.Y.1993) (McCurn, S.J.); *Zisel v. Prudential Insur. Co. of Amer.,* 845 F.Supp. 949, 950 (E.D.N.Y.1994).

■ Plaintiffs argue that, even if the Court were to apply the arbitrary and capricious standard of review, the Administrator's decision would fail because the Administrator "is inherently biased since the employer and the 'Plan Administrator' are one and the same entity." Pl.Mem. at 16. This fact alone, however, is not enough to establish that the Administrator's denial was arbitrary and capricious. Rather, in analyzing a claim pursuant to 29 U.S.C. § 1132(a)(1)(B), the Court must weigh the presence of such a conflict of interest "as a 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989) (quotation omitted).

■ The Second Circuit has stated that a denial of a claim for ERISA benefits is arbi-

trary and capricious if "there has been a clear error of judgment," *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.,* 46 F.3d 1264, 1271 (2d Cir.1995) (quotation omitted), that is, if the denial was not supported by " 'substantial evidence.' " [4] *Pagan,* 52 F.3d at 442 (quotation omitted). The Court, therefore, must look to the basis for the Administrator's denial of plaintiffs' request for severance in order to determine whether it was supported by substantial evidence.

### b. Administrator's Determination

The Plan Administrator for The Ground Round, Inc. Severance Pay Plan notified each plaintiff, in writing, on July 20, 1993, of the denial of their respective claims for severance benefits. According to these letters, the claims were denied because the Administrator determined that the plaintiffs had been

> discharged within the meaning of section III of the Plan, in particular, section III(vii), for "serious breaches of duty or responsibility, such as violation of Company policy or procedure," specifically violation of The Ground Round, Inc. Business Ethics and Conflict of Interest Policy, which you acknowledged on October 6, 1986, by your involvement in a competing enterprise.[5]

Def.Mem.Exs. 8–9. Plaintiffs subsequently appealed this denial, specifically challenging the determination that they had been terminated for cause. In their appeal, plaintiffs contended that the reasons set forth by the Plan Administrator for the denial of their severance requests were a "sham" and did not constitute "cause" as defined by the Plan.

In their letter in support of their appeal, plaintiffs set forth several arguments as to why they had not been discharged for

---

4. Substantial evidence is defined as "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker and] ... requires more than a scintilla but less than a preponderance." *Sandoval v. Aetna Life & Casualty Ins. Co.,* 967 F.2d 377, 382 (10th Cir.1992) (quotations omitted).

5. The Ground Round, Inc. Severance Pay Plan provides that any employee who is "discharged"

is not entitled to severance pay. Def.Mem.Ex. 13 p. 2. The Plan defines "discharge" as "a termination initiated by the Company for cause." *Id.* p. 3. "Cause," according to the Plan, "includes, but is not limited to, serious breaches of duty or responsibility, such as violation of Company policy or procedure, theft, insubordination, or falsification of Company records or reports." *Id.*

"cause."[6] Initially, plaintiffs argued that the Business Ethics and Conflict of Interest Policy, "was not in force and effect in October 1991." Def.Mem.Ex. 5. They also contended that, even assuming it was still in effect, their actions did not violate the policy because their Subway shop was not a competitor of The Ground Round.

Plaintiffs' letter brief also argued that they were not in violation of the policy because they were merely financial backers of the Subway franchise and because they had "voluntarily divested themselves of any interest in the Subway franchise over seven months prior to" their discharge. Finally, plaintiffs referred to the fact that the company had previously asked a former Executive Vice President to divest himself of his interest in another restaurant when it became aware of the potential conflict. According to plaintiffs, once the Vice President had divested himself, he was not penalized any further by the Company. Def.Mem.Ex. 5.

On January 24, 1994, the Benefits Committee of The Ground Round, Inc. notified plaintiffs that their appeals were denied. According to the notification letter, the Committee based its decisions upon the following:

–The appeals letter and attached information submitted by [plaintiffs];

–The Ground Round, Inc. Business Ethics and Conflict of Interest Policy;

–The Ground Round, Inc. Termination Policy;

–The Ground Round, Inc. Severance Pay Plan;

–The reason [plaintiffs] were terminated;

–Whether [plaintiffs] had ever signed an acknowledgement of receipt and understanding of the policy;

–Whether [plaintiffs] had an interest in and/or were officers of the Subway Franchise; and

–Whether [plaintiffs] had disclosed their interest in the Subway Franchise.

Def.Mem.Ex. 11.

As stated above, in order to determine whether the decision of the Administrator was arbitrary and capricious, the Court must determine whether the decision was supported by substantial evidence. *Pagan*, 52 F.3d at 442. At this stage of the litigation, however, the facts, as established, are insufficient to enable the Court to determine whether the Administrator's denial was in error.

■ Plaintiffs submitted several viable arguments to the Administrator in support of their appeal of the denial of severance pay. The record, however, contains little indication of whether these arguments were ever addressed by the Benefits Committee. The only reference to plaintiffs' arguments is found in the January 24, 1994, denial letter from the Company which states that the Committee had "reviewed and/or discussed" those arguments in making its determination. The ambiguity regarding whether the Benefits Committee ever genuinely considered plaintiffs' arguments, along with the fact that the Administrator may have acted under a conflict of interest compels the Court to conclude that questions of material fact exist as to whether the Administrator's decision denying benefits was arbitrary and capricious as a matter of law. Therefore, defendants' motion is denied as to these claims.

## II. CLAIMS 6 & 10—ERISA—ATTORNEYS FEES

In light of the fact that the Court has found that questions of material fact exist which preclude a determination of plaintiffs' severance pay claims at this time, it must also deny defendants' motion for summary judgment as to their claims for attorneys' fees.

## III. CLAIMS 4 & 9—BREACH OF CONTRACT—UNUSED VACATION PAY

Plaintiffs argue that the defendant, The Ground Round, Inc., breached its contracts with them by refusing to pay for their unused vacation days upon their respective ter-

---

6. Plaintiffs reiterate most of these same arguments in opposition to the motions presently pending before the Court.

minations.[7] In order to succeed on these claims, plaintiffs have the burden of showing (1) that they were not terminated "for cause;" and (2) that the Company's policy, as applied, was to deny vacation pay only to those employees who were terminated "for cause." Accordingly, to prevail on its motion for summary judgment, The Ground Round must show that there is no evidence in the record to support such assertions. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

### a. Termination for Cause?

The facts in the record are undisputed regarding the series of events that lead up to the Company's dismissal of the plaintiffs. In 1986 both plaintiffs received and signed copies of the Company's "Business Ethics and Conflict of Interest" policy. A portion of this policy stated that a prohibited conflict of interest could exist where an employee has an ownership interest in any organization that is in direct or indirect competition with The Ground Round. In 1989 each plaintiff became a silent partner in a Subway franchise. Plaintiffs maintained their ownership interests in the franchise until May 1991, at which time both plaintiffs sold their interests and ended their affiliation with Subway. Finally, in October 1991 plaintiffs were both allegedly fired for violating the Company's Conflict of Interest Policy as a result of their interests in the Subway shop.

█ The fact that plaintiffs had divested themselves of their alleged conflict of interest prior to their firings is not sufficient, standing alone, to create a question of material fact. However, this fact does create a triable question as to whether plaintiffs were discharged for cause when viewed in connection with other portions of the record. Plaintiffs have made unrebutted factual allegations which indicate that at least two other Company executives violated the Conflict of Interest Policy after its enactment. Robert Eisen-

berg, a Regional Director, allegedly violated the Policy by hiring his brother's company to perform extermination services for The Ground Round. Eymer Aff. ¶ 7(d)(ii). Additionally, Jim Riley, a Division Vice President, allegedly violated the Policy by owning several "gin mills," while employed by the Company. Lappin Dep., Ex. 6 p. 23. Neither Mr. Eisenberg or Mr. Riley were fired or disciplined as a result of their alleged conflicts of interest.

Viewing these facts and allegations in the light most favorable to the plaintiffs, a reasonable jury could conclude that plaintiffs were not, in fact, fired because of their involvement with the Subway franchise.

### b. Vacation Pay Policy

The Ground Round's "Vacation Policy," states that "[e]mployees who have been discharged ... will forfeit all unused vacation...." Def.Mem.Ex. 24. Similarly, the Company's "Termination Policy" states that

> Employees who terminate voluntarily (resignation with at least two weeks notice or retirement) or who are released are to be paid for all vacation time earned, but *not taken,* at time of termination. Employees who are discharged or resign without notice are not to be paid for any vacation not taken prior to discharge.

Def.Mem.Ex. 12 (emphasis supplied). Although the Company's Vacation Policy does not specifically define the term "discharge," the Termination Policy defines it as "a termination initiated by the Company *with or without cause.*"[8] *Id.* (emphasis added).

It is undisputed in this case that the termination of each plaintiff was initiated by the Ground Round. Defendant argues, therefore, that even if it were shown that plaintiffs were not terminated for cause, under the terms of the Termination Policy they still would not be entitled to reimbursement for

---

**7.** Plaintiff Eymer is seeking $7,708.33 in reimbursement for his unused vacation days, while plaintiff Lappin is seeking $5,029.92. Complaint ¶¶ 20 & 57.

**8.** As part of this definition of "discharge," the Policy also includes a non-exclusive list of

"things that could result in termination of employment." This list is comprised of thirteen items, each of which describes improper conduct that could lead to termination if engaged in by an employee. Def.Mem.Ex. 12.

their unused vacation days because they were "discharged."

Plaintiffs concede that the plain meaning of the term "discharge," as defined in the Termination Policy, means terminated "with or without cause." They argue, however, that the Company historically applied the Vacation Pay Policy to deny vacation pay only to those employees who were terminated "for cause." *See* Eymer Supp.Aff. ¶¶ 2–5. Therefore, according to plaintiffs, the Company would be obligated to award them vacation pay if they were discharged without cause.

In support of their argument, plaintiffs rely primarily upon Mr. Eymer's Supplemental Affidavit in which he states that, while he was a Division Vice President, he "was told by the Company that the only ground upon which [he] could deny vacation pay benefits [to a terminated employee] was if the employee was terminated *for cause.*" Eymer Supp.Aff. ¶ 2 (emphasis added).

The Company does not directly refute this allegation made by Mr. Eymer. Rather, it argues that the record "demonstrates that from January 1990 to June 1994, The Ground Round consistently granted vacation pay to its monthly paid employees, like [p]laintiffs, who were *released,*[9] and denied vacation pay to its monthly paid employees who were *discharged,* as [p]laintiffs were." Def. Supp.Mem. at pp. 7–8 (emphasis added).[10]

However, in viewing the evidence in the light most favorable to plaintiffs the Court is unable to determine whether the Company applied its vacation policy to deny vacation pay to those employees who were "dis-

charged" as that term is defined in the Termination Policy, or only applied it to those employees who were terminated for cause.[11] Therefore, defendant's motion for summary judgment on this claim is denied.

## IV. CLAIM 5—N.Y.EXEC.LAW § 296— AGE DISCRIMINATION

The Ground Round, Inc., has also moved for summary judgment on plaintiff Eymer's age discrimination claim. In evaluating the viability of an age discrimination claim brought pursuant to N.Y.Exec.Law § 296, the Court must analyze the claim as if it were brought pursuant to the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1), or Title VII. *Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1180 (2d Cir.1992), *cert. denied,* 506 U.S. 826, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Because intent is often the critical issue in age discrimination cases, the Second Circuit has warned trial courts to "be cautious about granting summary judgment," to the employer. *Gallo v. Prudential Residential Svcs., L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994). As stated by the court in *Gallo,* "writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, [therefore] affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Id.* Accordingly, summary judgment should not be granted unless the Company is able to show, from the facts established in the record, that no reasonable jury could conclude that plaintiff was terminated be-

---

**9.** The Plan defines a "release" as

  a termination initiated by the Company due to
  1. A lack of work and the Company does not anticipate the availability of work for the foreseeable future, and/or
  2. An Eligible Employee's failure to meet the required performance standards of the position despite his/her best efforts, and/or
  3. Any other reason, other than "cause."
  Pl.Mem.Ex. 13 at p. 3.

**10.** The Company bases this assertion on the information contained in a chart that was provided to plaintiffs in response to one of their Interrogatories. This chart contains a list of the 92 people who left the Company's employ between January 1990 and June 1994. Pl.Mem.Ex. 2. While the

chart provides a "reason for termination" for each of the 92 people, it does not disclose whether they were "released" or "discharged" as those terms are defined in the Policy.

**11.** The Court is similarly unpersuaded by the Company's argument that its consistent application of the Policy is exhibited by the fact that from 1990–94, there were eight employees who, like plaintiffs, were terminated for violating Company policy, and each of them was denied vacation pay upon termination. *See* Pl.Mem.Ex. 2. This argument begs the question of whether plaintiffs were, in fact, terminated for violating Company policy. Because the Court has already determined that such a finding cannot be made at this stage, this argument is without merit.

cause of his age. *See Woroski v. Nashua Corp.*, 31 F.3d 105, 110 (2d Cir.1994) ("some evidence of age bias" not sufficient to defeat properly supported motion).

■ As the basis for his claim, plaintiff argues that the Company's stated reason for terminating him was merely a "pretext," and that the real reason was his age. Therefore, because this is a "pretext" case, the Court must apply the burden shifting scheme that was enunciated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[12] *Tyler*, 958 F.2d 1176 at 1180.

■ Because it has conceded that the facts of this case are sufficient to establish a prima facie case, defendant has the burden of showing a non-discriminatory reasons for firing Mr. Eymer. The Ground Round, Inc. has alleged that Mr. Eymer was discharged for violating its Conflicts of Interest Policy. This reason, "taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, ——, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993). Accordingly, the burden shifts back to plaintiff to "show that there is a material issue of fact as to whether (1) [The Ground Round's] asserted reason for discharge is false or unworthy of belief *and* (2) more likely than not [plaintiff's] age was the real reason for the discharge." *Woroski*, 31 F.3d at 108–09 (emphasis added).

■ As stated above, the evidence in the record creates a material issue of fact as to whether the Company's reason for plaintiff Eymer's termination "is false or unworthy of belief." Therefore, the Court must now focus on whether the facts in the record also indicate that plaintiff Eymer's age may have been the real reason for his firing.

As support for his contention that he was terminated because of his age, plaintiff Eymer relies upon several statements allegedly made by Company executives which, he claims, indicate that they possessed an "age bias." While the Court agrees with the defendant that the majority of the statements relied upon by plaintiff Eymer were made after he was terminated by the Company, one of them was made by Mr. O'Donnell before plaintiff's firing. The statement in question was made on January 26, 1990,[13] by Mr. O'Donnell to Mr. Harold von Ulmer, then the Vice President of Marketing and a Director of the Company. During their conversation on January 26, Mr. O'Donnell stated, in reference to the Company, "that all the employees were too old, that they couldn't change, they had the [Howard Johnson] mentality and don't want to change anything." von Ulmer Dep., Pl.Ex. 13. Plaintiff contends that this statement clearly illustrates the animus that Mr. O'Donnell held towards the Company's older employees. While the significance of this statement is enhanced by the fact that Mr. O'Donnell was the person who actually fired plaintiff, the statement, standing alone, would not be sufficient to warrant denial of defendant's motion. *Woroski*, 31 F.3d at 108 (statements by plant manager evincing discriminatory animus towards older employees not sufficient to defeat summary judgment motion).

In an attempt to bolster the significance of Mr. O'Donnell's statement, plaintiff contends that the Company's personnel history shows that the animus exhibited by Mr. O'Donnell was a reflection of Company policy which was incorporated into its personnel decisions. More specifically, plaintiff Eymer points to the fact that during Mr. O'Donnell's 3½ year tenure as Company President, several older

---

**12.** Under the well established *McDonnell Douglas* standard, plaintiff has the initial burden of establishing a prima facie case. In order to do so, plaintiff must show that (1) he was within the protected age group; (2) he was qualified for the job; (3) he was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of age discrimination. *Jackson v. Lyons Falls Pulp & Paper, Inc.*, 865 F.Supp. 87, 95 (N.D.N.Y.1994) (Munson, S.J.). Here, defendants concede that, for the purposes of the pres-

ent motion, the facts of this case establish a prima facie case for plaintiff. Once a prima facie case has been established, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for discharging the employee. *Id.* at 94.

**13.** This statement was made soon after Mr. O'Donnell's hiring as President, which occurred on January 15, 1990. Pl.Ex. 2.

employees were terminated and replaced by younger workers.[14]

In viewing the entire record in the light most favorable to plaintiff, the Court finds sufficient facts exist from which a reasonable jury could conclude that a discriminatory animus towards older employees existed in the Company at the time of his termination. *See Sirota v. Welbilt Appliance, Inc.,* 840 F.Supp. 11, 14 (E.D.N.Y.1994) ("proof that defendant engaged in a pattern and practice of terminating older employees could be relevant to the question of whether plaintiff was terminated for age-related reasons"). Therefore, defendant's motion for summary judgment on plaintiff Eymer's age discrimination claim is denied.[15]

Accordingly, it is hereby

ORDERED, that defendants' motion for summary judgment as to claims three and eight of the Complaint is GRANTED for the reasons stated at the November 3, 1995, Motion Calendar; and it is further

ORDERED, that defendants' motion for summary judgment as to the remaining claims is DENIED.

ORDERED, all pretrial submissions to be filed by 4/1/96; Final Pretrial Telephone Conference to be held 4/10/96 at 4:30 pm; Jury Trial set for 4/15/96 at 9:30 am in Syracuse, New York.

IT IS SO ORDERED.

---

14. In support of this argument, plaintiff cites to the record in an attempt to show that during Mr. O'Donnell's 3½ year tenure as President, several older employees were terminated and replaced by younger workers. Pl.Mem. pp. 9–11. For example, the record shows that in February 1990 the Company terminated Robert Brady, 39, from his position as Vice President of Human Resources. While the reason given for Mr. Brady's termination was "reduction in workforce," he was ultimately replaced by Elizabeth Baker Brennan, who was 35 years old at the time that she became Vice President. Ex. 14, p. 19.

Also in February 1990, the record shows that Stuart Plumer, 57, was terminated from his position as Vice President and General Counsel, also as part of a "reduction in workforce." As with Mr. Brady, Mr. Plumer's position was ultimately filled by a younger employee, Frank Puthoff, who was 44 years old at the time of his hiring. Ex. 2. An additional example is seen in the case of Mr. von Ulmer, 51, who was replaced as Vice President of Marketing by Judith Kelly, 39. Ex. 2, Ex. 14, p. 29.

15. The Court is unpersuaded by the remaining arguments set forth by the Ground Round in support of its motion for summary judgment.