**BRINK'S INC., Plaintiff and Defendant on Counterclaim,**

v.

**The CITY OF NEW YORK, Defendant and Counterclaimant.**

**BRINK'S INC., Third-Party Plaintiff,**

v.

**John ADAMS, Anthony De Nardo, Trevor Fairweather, Richard Florio, James Gargiulo, Jorge Olivari and Michael Solomon, William J. Donovan, Francis Gitto, Ramon Hernandez, William McInerney, Anthony San Marco, Jose Rodriguez, James Springett, John Barrera and Joseph Nardo, Third-Party Defendants.**

No. 80 Civ. 6975.

United States District Court, S. D. New York.

March 5, 1982.

Milgrim, Thomajan, Jacobs & Lee, New York City, for plaintiff and third-party plaintiff Brink's Inc.; Robert A. Meister, New York City, of counsel.

Allen G. Schwartz, Corp. Counsel, New York City, for defendant The City of New York; Jefferey E. Glen, Sp. Asst. Corp. Counsel, New York City, of counsel.

Philip M. Kovitz, New York City, for third-party defendant Jose Rodriguez.

Peter D. Cooper, Brooklyn, N. Y., for third-party defendant William J. Donovan.

## MEMORANDUM

EDWARD WEINFELD, District Judge.

Brink's Inc. ("Brink's") moves for summary judgment on the counterclaims of third-party defendant William J. Donovan for intentional infliction of emotional distress and wrongful discharge on the grounds that there is no genuine issue of material fact concerning such claims and that it is entitled to judgment as a matter of law. Donovan has not submitted the required Rule 3(g) statement, nor any other response papers to the motion; consequently, all "the material facts set forth in [Brink's 3(g) statement] will be deemed to be admitted." [1]

Donovan was originally hired by Brink's in 1976 as an auxiliary guard. He was appointed in September 1978 to the position of assistant parking meter supervisor in connection with Brink's contract with The City of New York to collect parking meter revenue and in October 1978 was promoted to parking meter supervisor. While his previous position as a guard was covered by a collective bargaining agreement, by accepting these appointments he transferred out of the bargaining unit and in his new position he was no longer covered by any collective bargaining agreement or any other written employment contract.

On April 9, 1980, The City of New York cancelled its contract with Brink's for the collection of parking meter revenue. After this date, as a consequence of the lack of work under the contract, Donovan was assigned to maintenance work at Brink's Murray Street facility until May 1, 1980, when he accepted an appointment as a premise guard assigned to a guard turret at the facility. As a premise guard he was not represented by any labor organization and no collective bargaining agreement or other written contract covered his position.

Donovan called in sick on July 8, 1980 complaining of a non-work related injury. On July 17, 1980 when he reported to Brink's to return his revolver, he was instructed by Al Putre, Brink's Assistant Manager, to advise Brink's each Monday and Friday as to his fitness to return to work and was warned that failure to so

1. Rule 3(g) of the Civil Rules for the Southern    District of New York.

report would result in his discharge. Donovan failed to report as directed and on August 5, 1980 he was notified by certified mail that he had not complied with the previous instructions and that if he did not contact Brink's upon receipt of the letter he would be terminated. Donovan failed to contact Brink's as requested and on August 22, 1980 he was discharged by Brink's due to his absence from work since July 17, 1980 and for failure to notify Brink's concerning his absence.

■ Donovan's claim for intentional infliction of emotional distress alleges that he was "demoted" and "harassed and verbally abused by several employees of Brink's" thereby suffering "severe emotional distress" and causing injury to his marriage. To state a claim for intentional infliction of emotional distress one must allege "conduct exceeding all bounds usually tolerated by decent society" and liability will only be found when the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[2] Brink's motion for summary judgment on this claim is granted on the ground that the conduct complained of, as a matter of law, fails to meet the requirements for the tort of intentional infliction of emotional distress.[3]

■ Donovan's second counterclaim is for wrongful discharge from employment. Un-der New York Law, since Donovan's employment was not pursuant to a contract for a specific term, his employment was terminable at will by either party at any time and for any reason.[4] While the existence of a cause of action for wrongful discharge of an employee "at will" is not settled under New York Law, it is possible that New York would recognize such a cause of action if a plaintiff can demonstrate that a defendant in discharging him violated a public policy "derived from . . . New York constitutional, statutory or decisional law."[5]

Donovan, however, has failed to allege that his discharge involved a violation of any such public policy and thus his complaint fails to support a cause of action for abusive discharge.[6] Nor are the allegations, which are devoid of any claim or facts to support any claim that Brink's acts were motivated by a malicious intent to injure him, adequate to state a claim for prima facie tort.[7]

For the foregoing reasons, Brink's motion for summary judgment on the counterclaims asserted by Donovan is granted. So ordered.

**2.** *Fischer v. Maloney,* 43 N.Y.2d 553, 557, 402 N.Y.S.2d 991, 992–93, 373 N.E.2d 1215, 1217 (1978).

**3.** *See Dinger v. Anchor Motor Freight, Inc.,* 501 F.Supp. 64, 68–70 (S.D.N.Y.1978); *Lekich v. International Business Machines, Corp.,* 469 F.Supp. 485, 488 (E.D.Pa.1979).

**4.** *Parker v. Borock,* 5 N.Y.2d 156, 159, 182 N.Y.S.2d 577, 579, 156 N.E.2d 297, 299 (1959); *Edwards v. Citibank, N.A.,* 74 A.D.2d 553, 425 N.Y.S.2d 327, 328 (1980); *Shaitelman v. Phoenix Mutual Life Ins. Co.,* 517 F.Supp. 21, 24 (S.D.N.Y.1980).

**5.** *Chin v. American Tel. & Tel. Co.,* 96 Misc.2d 1070, 410 N.Y.S.2d 737, 741 (1978), aff'd, 70 A.D.2d 791, 416 N.Y.S.2d 160 (1979); *see Placos v. Cosmair, Inc.,* 517 F.Supp. 1287, 1289 (S.D.N.Y.1981); *Savodnik v. Korvettes,* 488 F.Supp. 822 (E.D.N.Y.1980).

**6.** *See Fletcher v. Greiner,* 106 Misc.2d 564, 435 N.Y.S.2d 1005, 1010 (1980); *Chin v. American Tel. & Tel. Co.,* 96 Misc.2d 1070, 410 N.Y.S.2d 737, 740–41 (1978), aff'd, 70 A.D.2d 791, 416 N.Y.S.2d 160 (1979); *Shaitelman v. Phoenix Mutual Life Insurance Co.,* 517 F.Supp. 21, 23–24 (S.D.N.Y.1980).

**7.** *See Ati, Inc. v. Ruder & Finn, Inc.,* 42 N.Y.2d 454, 398 N.Y.S.2d 864, 368 N.E.2d 1230 (1977); *Kushner v. Ciba-Geigy Corp.,* 76 A.D.2d 950, 428 N.Y.S.2d 745, 746 (1980); *Chin v. American Tel. & Tel. Co.,* 96 Misc.2d 1070, 410 N.Y. S.2d 737, 739–40 (1978), aff'd, 70 A.D.2d 791, 416 N.Y.S.2d 160 (1979).