**Angelina SIANO, Plaintiff,**

v.

**Bruce HABER, Individually and as President, Louis Buther, Individually and as Vice President, Stuart Fleischer, Individually and as Vice President of Finance, and Micro Bio–Medics, Inc., Defendants.**

No. 97 Civ. 2459 DC.

United States District Court,
S.D. New York.

March 29, 1999.

Fitzgerald & Fitzgerald, P.C., By John M. Daly, Yonkers, New York, for plaintiff.

Levy, Ehrlich & Petriello, P.C., By John J. Petriello, New York City, for defendants.

## OPINION

CHIN, District Judge.

In this employment case, plaintiff Angelina Siano alleges that defendants unlawfully terminated her employment because of her age. Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Although plaintiff was seventy-one years old when defendants fired her, she was already sixty-four years old when they hired her. Moreover, defendants present compelling evidence that Siano was unable to adapt to her job as it evolved over time. On the record before the Court, no reasonable jury could conclude that defendants discharged her because of her age. Defendants' motion is therefore granted and the complaint is dismissed.

## BACKGROUND

### A. The Facts

Construed in the light most favorable to plaintiff, the facts are as follows:

Defendant Micro–Bio Medics, Inc. ("MBM") is in the business of buying and selling medical supplies. Defendants Bruce Haber and Louis Buther are, respectively, its President and Vice President. In March 1995, defendant Stuart Fleischer joined MBM as Vice President of Finance. Plaintiff claims that she began experiencing age discrimination about the time Fleischer started working at MBM.

Siano was born on August 4, 1924. She was sixty-four when MBM hired her on February 8, 1989. Siano worked in the

Accounts Payable department as a file clerk where her supervisor was Marvin Kalter, the Controller. In approximately September 1993, MBM hired Meherzeen Katrak, who eventually became co-supervisor in August 1995. Both Kalter and Katrak were supervised by Fleischer. MBM terminated plaintiff's employment on May 31, 1996, when she was seventy-one years old. Siano was replaced by a series of younger women.

Siano performed her job as file clerk well. She consistently received satisfactory performance evaluations and annual pay raises. By the time she was fired, however, the company had come to rely heavily on computers to manage information. Plaintiff's position as file clerk had evolved from being completely paper-based to requiring use of the company's computer system. MBM claims that despite attempts to train Siano, she was not able to become proficient at the computer. Plaintiff argues that she only received minimal training and was never informed that her job was in jeopardy despite company policy requiring oral and written warnings as well as probation before discharging an employee.

**B. Procedural History**

Siano has duly exhausted her administrative remedies. She timely filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") and received a right-to-sue letter dated January 15, 1997. On April 8, 1997, within ninety days of receipt of the right-to-sue letter, Siano commenced this lawsuit.

In her complaint, plaintiff alleges: (1) age discrimination in violation of the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 630(f); New York State Human Rights Law, N.Y.Exec. Law

§ 292(6); and New York City Human Rights Law, N.Y.C.Admin.Code § 8–102(1)(a);[1] and (2) negligent and intentional infliction of emotional distress. Siano seeks damages, costs, and attorney's fees. On July 24, 1997, defendants filed an answer denying the allegations and asserting affirmative defenses.

This motion followed.

## DISCUSSION

**A. Legal Standards**

**1. Summary Judgment**

The standards governing motions for summary judgment are well settled. A court may grant summary judgment only where there is no genuine issue of material fact and the moving party, is therefore entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To create an issue for trial, there must be sufficient evidence in the record to support a jury verdict in the nonmoving parties favor. See id. at 249–50, 106 S.Ct. 2505.

To defeat a motion for summary judgment, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, 106 S.Ct. 1348. The nonmoving party may not rest upon mere "conclusory allegations or denials," but must set forth "concrete particulars" showing that a trial

---

1. The caption for the third cause of action states: "Pleading a New York City Cause of Action for *Race* Discrimination Under N.Y.C. Admin. Code 8–102(1)(a)." (Compl. at 10 (emphasis added)). The Court construes this cause of action as one for age discrimination because plaintiff does not allege facts concerning race. In any event, plaintiff has voluntarily agreed to discontinue this cause of action because "discovery has not resulted in any evidence showing that this law applies to the facts of this case." (Pl.Mem. at 15).

is needed. *National Union Fire Ins. Co. v. Deloach,* 708 F.Supp. 1371, 1379 (S.D.N.Y.1989) (quoting *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984)). As the Supreme Court stated in *Anderson:* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

**2. *Age Discrimination***

In the absence of direct evidence of discrimination, a plaintiff in an employment discrimination case usually relies on the three-step *McDonnell Douglas* test. First, a plaintiff must establish a prima facie case of unlawful discrimination by showing that (1) she or he is a member of a protected class (2) who was qualified for her or his position (3) who suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 63 (2d Cir.1997). Second, if the plaintiff establishes a prima facie case, a rebuttable presumption of discrimination arises and the burden then "shifts" to the defendant to articulate a legitimate, nondiscriminatory reason for the employment decision. *See Stratton v. Department for the Aging for the City of New York,* 132 F.3d 869, 879 (2d Cir.1997); *Fisher v. Vassar College,* 114 F.3d 1332, 1335–36 (2d Cir.1997) (en banc), *cert. denied,* — U.S. —, 118 S.Ct. 851, 139 L.Ed.2d 752, *reh'g denied,* — U.S. —, 118 S.Ct. 1341, 140 L.Ed.2d 501 (1998). Third, if the defendant articulates a nondiscriminatory reason for its actions, the presumption of discrimination is rebutted and it "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The plaintiff must then show, without the benefit of any presumptions, that more likely than not the employer's decision was motivated at least in part by a discrimina-

tory reason. Because the defendant has at that point offered a nondiscriminatory reason for its actions, the plaintiff must show that the proffered reason is in reality a pretext for unlawful discrimination. *See Fisher,* 114 F.3d at 1337.

For the reasons set forth in *Lapsley v. Columbia Univ.,* 999 F.Supp. 506 (S.D.N.Y.1998), and other decisions, I believe that the *McDonnell Douglas* test should be eliminated. *See Peterson v. City College,* 32 F.Supp.2d 675, 683–84 (S.D.N.Y.1999); *Evans v. Golub Corp.,* 29 F.Supp.2d 194, 199–201 (S.D.N.Y.1998). *McDonnell Douglas* has developed into a complex seven or eight-part test that has proven at times to be confusing and unworkable. *See Denny Chin & Jodi Golinsky, Moving Beyond McDonnell Douglas: A Simplified Method for Assessing Evidence in Discrimination Cases,* 64:2 Brook.L.Rev. 659 (1999). It should be discarded and courts instead should focus on the "ultimate issue"—whether the plaintiff has proven that more likely than not the employer's decision was motivated at least in part by an "impermissible," or discriminatory, reason. *Id.* In considering a summary judgment motion, courts must determine whether the plaintiff has presented sufficient evidence to permit a reasonable jury to conclude that a defendant's decisions were motivated at least in part by an impermissible reason. *See Fisher,* 114 F.3d at 1337.

**B. *Application***

 As defendants rely on the *McDonnell Douglas* test and it remains governing law, however, I am bound to apply it. Here, I assume that plaintiff has made out a prima facie case. Defendants have articulated a legitimate, nondiscriminatory reason for firing her: They contend that plaintiff could not adapt as her position evolved into one that required the use of computers. Hence, I proceed directly to the ultimate question: Whether Siano has presented sufficient evidence from which a

reasonable jury could find discrimination. I do so by reviewing first Siano's evidence, then defendants' evidence, and finally the record as a whole, keeping in mind the "elusiveness" of proof of discrimination and the principle that the jury is "entitled to view the evidence as a whole." *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 314 (2d Cir.1997); *see Lapsley*, 999 F.Supp. at 515–16.

### 1. *Plaintiff's Evidence*

Plaintiff presents the following purported evidence of discrimination: (a) her age; (b) defendants failed to properly train her; (c) defendants subjected her to a hostile work environment; (d) she had a favorable work history; (e) defendants failed to comply with their employment policies; (f) she was replaced by younger employees and her former position still exists; and (g) pretext.

### a. Age

Plaintiff was seventy-one years old when she was fired.

### b. *Defendants' Purported Failure to Train Plaintiff*

In her complaint, plaintiff claims that she "was never offered any training on any computer or data entry system." (Compl. ¶ 18 (emphasis added)). The evidence is to the contrary. Indeed, plaintiff concedes that she had some training during a two-week period for what she characterizes as a one-time project. Although plaintiff denies that she received as many hours of training as defendants claim, she stated in her declaration that: Kalter showed her how to perform one function in approximately fifteen minutes; "maybe once a day" she would ask Kalter or Katrak a computer-related question; and her grandson who was a part-time employee answered some of her questions. (Siano Decl. ¶¶ 4–5). According to plaintiff, she learned how to log on and off the computer and performed the task to which she was assigned well. (*Id.* ¶ 6). For "Most Sig-

nificant Achievements of the Year" on her 1995 self-evaluation, Siano wrote: "I learned how to work the computer system and am now in a position to help the [department] better." (Pl.Dep.Ex. 15 at 3). Plaintiff asserts that she was willing to be trained, but that after this two weeks on the computer no more training was offered. On the record before the Court, however, a reasonable jury could only find that she did receive some training.

### c. *The Alleged Hostile Work Environment*

Plaintiff complains that defendants harassed her in an effort to force her to quit. First, plaintiff complains that Fleischer made derogatory comments about her to other employees, including: "Is she sweating yet?" "Is she tired yet?" and "She only works two hours a day." Second, plaintiff claims Fleischer doubled her workload, insulted her filing skills, forced her to work past 5 p.m. knowing that she had to leave at that time to get a ride home, and insisted that she return to work immediately after a family member's funeral. Siano also complains that one week she was sent to a cold warehouse to find files. I assume, for purposes of this motion, that this all occurred, as plaintiff alleges.

### d. *Plaintiff's Work History*

Plaintiff consistently received good evaluations. Indeed, the evidence shows that plaintiff performed her filing duties well. On Siano's 1995 Supervisor Evaluation, in the space provided for "Most Significant Achievement of the Year," Katrak wrote: "Learning to use the computer system to look up skipped invoices." (Pl.Dep.Ex.16). While Katrak indicated that plaintiff's performance on the computer was satisfactory, the evaluation also states, however, that Siano had "just started learning" how to do this. (*Id.*).

### e. *Defendants' Policies*

MBM's Employee Handbook contains detailed procedures to be followed in the case of an employee whose performance or conduct is not satisfactory. (Pl.Dep.Ex. 6 at 8–10). These procedures include two verbal warnings, the second of which is to be documented in writing, then a written warning, followed by a period of probation, and, finally, discharge. Plaintiff denies that she was given any verbal warnings and it is undisputed that she was never given any written warnings. Plaintiff has submitted written warnings for other employees to document that MBM generally follows this policy. Katrak has given written warnings to two other employees in plaintiff's department. The four other people who were fired under Fleischer were given documented oral warnings as well as written warnings. I assume for purposes of this motion that MBM did not follow its procedures in discharging plaintiff.

### f. *Plaintiff's Replacements and the Continued Existence of a Filing Position*

Siano claims that her position was not eliminated, but that she was simply replaced by younger people—a string of seven women, most of whom were in their twenties or thirties, but one of whom was forty-eight. None of these replacements remained at the company longer than nine months, a fact that plaintiff contends shows that she was a valuable employee.

Plaintiff further asserts that her position still exists because MBM hired a temporary employee whose only duty was filing. The record shows, however, that those who initially replaced plaintiff worked on the computer. Plaintiff's first replacement, for example worked on the computer a third of her time. (Pl.Ex. 4 at 119). With only three hours of training, this first replacement learned how to sign on, look up invoices, and perform data entry. (*Id.* at 114–15, 119). Plaintiff's second replacement only required a day of training and also spent a third of her time on the computer. (*Id.* at 121, 127). The third replacement had previously held another position at the company and it does not appear that she required further training on the computer system. She did, however, work extensively on the computer. (*Id.* at 126–27). Since the third replacement, the company has hired other employees and temporary employees, most of whom also worked on the computer. Plaintiff notes one person who only filed, but it appears from the record that she was a temporary employee. (*See* Pl.Ex. 6 at 88–89). On this record, a jury could only conclude that the employees who replaced plaintiff were required to spend approximately a third of their time using the computer.

### g. *Pretext*

Plaintiff also argues that defendants' stated reason for terminating her employment is pretextual. On the record before the Court, however, the evidence of pretext is weak. Plaintiff argues, for example, that defendants kept her on for eight months after purportedly making a determination that she could not be trained on the computer and that this delay in firing her shows that her lack of computer skills was not the reason she was fired. As discussed below, however, between the time defendants tried to train her and when she was fired, they attempted to find her tasks unrelated to the computer to fill the extra time she had due to the decrease in filing work. Moreover, defendants' evidence that they dismissed plaintiff for legitimate, nondiscriminatory reasons is compelling. Nonetheless, I assume for purposes of this motion that defendants may have engaged in some exaggeration. Plaintiff's denials and defendants' evaluations of plaintiff, for example, belie defendants' assertions that she had trouble using the fax machine, the photocopier, and the telephone.

To summarize, plaintiff's evidence of discrimination is extremely thin: She was

seventy-one years old when she was fired; she was adversely treated from time to time; she performed her work as file clerk well; MBM did not follow its usual employment procedures; and MBM may have exaggerated its reasons for firing her.

### 2. Defendants' Evidence

Defendants maintain that they did not fire plaintiff because of her age, but because they determined that she was unable to adapt to her position as it evolved to require the use of computers. They have presented substantial evidence to support their contention.

### a. Age

Plaintiff was sixty-four when defendants hired her.

### b. The Change In Plaintiff's Position

During the latter years of Siano's employment, the company began transacting more of its business by computer and using the computer system for data management. Because the volume of paper generated decreased, filing-related duties also decreased. Computer literacy therefore became increasingly important and the company wanted plaintiff to be able to look up check numbers and perform simple data entry so that she could fill the time she saved by the decrease in filing duties.

As described below, defendants made some attempt to train plaintiff to use the computer system. Defendants determined, however, that plaintiff was unable to learn how to use the computer system. According to defendants, plaintiff was fired because she could not be adequately productive without the requisite computer skills. Plaintiff's termination report states

that the "position has been upgraded from clerk to [accounts payable support]—computer, data entry [and] phone skills required on a daily basis." (Pl.Dep.Ex. 1 at 5). Although plaintiff quarrels with the extent to which defendants gave her training on the computer, she does not take issue with the proposition that the job did change. Further, the evidence does not support her assertion that she was able to master the necessary computer skills.[2]

### c. Defendants' Efforts to Train Plaintiff

Defendants present substantial evidence that they attempted to train plaintiff to use the computer. Defendants assert, and plaintiff does not contest, that she worked on a two-week project involving the computer. Katrak described in detail her efforts over a period of weeks to teach plaintiff to use the computer. (Pl.Ex. 4 at 73–75). Specifically, Katrak showed Siano how to sign on to the computer and look up accounts; plaintiff, however, could not learn even how to sign on. (*Id.* at 73, 75). Likewise, Kalter attempted to teach Siano, during a two-week period, to use the computer in general and then how to look up invoices. (Pl.Ex. 2 at 25–31). According to Kalter, plaintiff was only able to perform the required task "[w]ith a great deal of difficulty and constant questions and even redundant questions after the two weeks." (*Id.* at 26).

Both Katrak and Kalter stopped attempting to train plaintiff on the computer after they concluded that she was not absorbing what they taught her. (*See* Pl.Ex. 4 at 75 (Katrak testifying that she did not continue training plaintiff "[w]hen it became apparent that [plaintiff could not]

---

**2.** Plaintiff's statements regarding her learning the computer betray a lack of proficiency with computers. In her declaration, for example, she states: "After about a week or two, I was getting the hang of the computer system and was able to log in and out by myself, and I satisfactorily completed the two-week project." (Siano Decl. ¶ 6). At her deposition, however, when asked whether she knew

"what the term logging onto a computer means," she answered "No." (Pl.Ex. 1 at 19). Although plaintiff stated in her declaration that she knew how to log on, she did not know what logging on was. In any event, it should not take one or two weeks to learn how to log on. By her own testimony therefore, it is clear that she never became proficient in using the computer.

sign on"); *id.* Ex. 2 at 31 (Kalter testifying that plaintiff did not receive any further formal training because "she was obviously not adept at [the computer]")). Nonetheless, MBM kept plaintiff on for approximately another eight months before firing her. During that time, the company attempted to fill plaintiff's workday with other tasks. Ultimately, MBM decided to fire plaintiff and upgrade her position to one that included working on the computer.

#### d. *Other Employees In the Protected Age Category*

In September 1996, four months after plaintiff's employment was terminated, 4.6% of MBM's employees were over the age of 60; 9.6% were between the ages of 50 and 59; and 28.7% were between the ages of 40 and 49. A total of 42.9% of all MBM employees were therefore in the protected class. When plaintiff was dismissed, even though she was seventy-one years old, MBM had two employees older than her.

#### e. *Work Conditions*

MBM had a legitimate reason to send plaintiff to the warehouse. The company needed to retrieve documentation for a tax audit. Kalter testified that he sent plaintiff to the warehouse of his own accord and not at the direction of Fleischer. Further, Kalter testified that he and others accompanied plaintiff to the warehouse and that plaintiff was told to advise Katrak or himself if plaintiff needed assistance moving anything. Moreover, as plaintiff stated in her declaration, workers at the warehouse help her move heavy boxes. MBM also had a legitimate business reason for increasing plaintiff's responsibilities. Defendants assert that everyone in her department was being called upon to do additional work due to the increased volume of business.

In sum, defendants have presented substantial evidence that their decision to dismiss plaintiff was not motivated by her age.

#### 3. *The Record as a Whole*

■ Considering the evidence as a whole, resolving all conflicts in the evidence and drawing all reasonable inferences in plaintiff's favor, I conclude that no reasonable jury could conclude that defendants terminated plaintiff's employment because of her age.

■ Although plaintiff has presented evidence of adverse treatment, she has not presented any evidence that the adverse treatment was motivated by any age-based animus. The comments attributed to Fleischer, for example, while derogatory, cannot fairly be characterized as discriminatory, age-based comments. Instead, the evidence suggests that Fleischer made the comments "Is she tired yet?" "Is she sweating yet?" and "She only works two hours a day" because he thought that she was lazy. Kalter testified that Fleischer "made comments as far as the amount of hours that she worked in a day," for example, "she put in three or four hours today," and "as to how much work she was doing." According to Kalter, Fleischer "was looking to get an eight-hour day out of her." (Pl.Mem. at 61–63; Pl.Ex. 2 at 90–97).

■ Likewise, even assuming that MBM did not follow its procedures before terminating plaintiff's employment, the record simply does not support the inference that this failure was based on discrimination. For purposes of this motion, the Court assumes that plaintiff was not given any warnings—verbal or written. The circumstances under which other employees were warned, however, differ from those under which defendants claim plaintiff was discharged. Other employees were warned about behavior that the company presumably believed could be improved, for example: constant personal phone calls, elongated breaks, tardiness, consistent mistakes, poor and abusive attitude, forgetting work badge, poor perfor-

mance, and poor attendance. (*See* Pl.Dep. Exs. 9–16). As plaintiff points out, however, defendants had determined that plaintiff could not learn how to use the computer and that further training would be futile. (Pl.Mem. at 40; Pl.Ex. 2 at 31 & Ex. 4 at 75). Defendants did not assume that she could not learn, for indeed they tried to train her. Only upon trying, and failing, did they abandon their efforts.

Defendants have presented substantial, largely unrebutted evidence that they did not discriminate against plaintiff because of her age. Plaintiff's age when she was hired as well as the overall age makeup of MBM's workforce, for example, undermine the contention that she was fired because of her age. Although Siano was seventy-one when she was fired, she was already sixty-four when she was hired. Further, two other employees were older than plaintiff when she was discharged and over forty percent of MBM employees were over forty. And, while plaintiff emphasizes that out of 279 employees only two were older than she, that only nine other employees were over the age of sixty, and that the next oldest employee in her department was forty-eight, she does not present any comparative statistics (such as general population employment statistics) that would indicate that defendants engaged in age discrimination. Indeed, the fact that MBM hired plaintiff at an age when many employees leave the workforce is evidence of the absence of age-based animus.

Further, defendants have presented evidence that the nature of plaintiff's position changed to require the use of computers. The record before the Court reflects that plaintiff was in fact trained and no evidence exists to suggest that defendants' decision to stop training plaintiff was because of her age. Although plaintiff alleges in her complaint that she was not "trained," she testified during her deposition that she was taught to use the computer "to see if the invoices were paid." (Petriello Aff.Ex. H at 33, 38). Plaintiff

also testified that defendants "showed [her] a little, no training, just one time, use this key, use that key, use this key. That was it. Then if I got stuck I had to call one of them." (*Id.* at 29–30). Plaintiff further testified that her grandson showed her "how to get into the computer," and "[i]f [she] got stuck he would say do this, do that." (*Id.* at 31).

■ Despite plaintiff's belief that she mastered the computer tasks she was taught, two of her supervisors concluded that she was unable to learn to use the computer system. MBM apparently made a business decision not to spend any more time attempting to train plaintiff. The record reflects that plaintiff's replacements learned how to use the computer system with very little training. While employers are required under the ADEA to treat employees in a neutral fashion, they are not required to spend more time and effort training an employee over forty than they would spend training anyone else. *See Parcinski v. Outlet Co.,* 673 F.2d 34, 37 (2d Cir.1982); *Jackson v. Lyons Falls Pulp & Paper, Inc.,* 865 F.Supp. 87, 98 (N.D.N.Y. 1994).

While it is true that most of the people hired to replace plaintiff were not in the protected class, at least one was forty-eight. Further, plaintiff's successors were compensated at approximately the same rate as she. Moreover, although evidence exists that MBM eventually hired one temporary employee whose sole job was to file, plaintiff's replacements in fact used computers extensively.

Finally, even assuming that defendants' justification for its decision to discharge plaintiff was pretextual, that defendants did not actually fire her because she could not learn the skills necessary to perform her job as it evolved, from a file clerk position to one requiring computer skills, a reasonable jury could not conclude that the pretext was a mask for age discrimination.

■ In the end, plaintiff's evidence of discrimination boils down to essentially

one fact, that she was seventy-one, and a subjective belief that she did not deserve to be fired. As she testified at her deposition:

Q. What facts ... support [your belief] that age was the cause of your termination?

A. Well, I didn't do anything wrong, and my evaluations were fine. I never was told that I did anything wrong, so what else was it?

Q. Are there any other facts that you have which would indicate that you were terminated because of your age?

A. Well, when I went to unemployment they told me that.

(Pl.Ex. 1 at 5–6). Of course, plaintiff's belief that she did nothing wrong, her receipt of positive evaluations, and statements made to her by "unemployment" do not constitute proof of discrimination. As the Second Circuit recently noted, "a jury cannot infer discrimination from thin air." *Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir.1998). Here, defendants' motion must be granted, for plaintiff's claim of age discrimination is based on little more than "thin air."

### B. *Infliction of Emotional Distress*

To sustain a claim under New York law for intentional infliction of emotional distress, a plaintiff must prove that the defendant engaged in "extreme and outrageous conduct" and that the defendant intentionally or recklessly caused plaintiff to suffer emotional distress. *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86 (Ct.App.1983). The offending conduct must "consist of more than mere insults, indignities, and annoyances and must be so shocking and outrageous as to exceed all reasonable bounds of indecency." *Lapsley v. Columbia Univ.*, 999 F.Supp. 506, 525 (S.D.N.Y.1998) (quoting *Nestlerode v. Federal Ins. Co.*, 66 A.D.2d 504, 414 N.Y.S.2d 398, 400 (4th Dep't), *appeal denied*, 48 N.Y.2d 604, 421 N.Y.S.2d 1029, 396 N.E.2d 487 (Ct.App.

1979)); *see also Fischer v. Maloney*, 43 N.Y.2d 553, 402 N.Y.S.2d 991, 993, 373 N.E.2d 1215 (Ct.App.1978) (stating that defendants' conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society").

On the record before the Court, no reasonable jury could conclude that plaintiff has met the high threshold required by New York law. Even assuming that all of plaintiff's allegations are true, defendants' alleged conduct was not by any means "so shocking and outrageous as, to exceed all reasonable bounds of indecency." *See, e.g., Bradley v. Consolidated Edison Co.*, 657 F.Supp. 197 (S.D.N.Y.1987) (negative evaluations and disparaging statements insufficient to state claim); *Brink's Inc. v. City of New York*, 533 F.Supp. 1123 (S.D.N.Y.1982) (harassment and verbal abuse insufficient to make out claim). Accordingly, this count is dismissed as well.

### CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted and the complaint is dismissed with prejudice. The Clerk of the Court shall enter judgment accordingly.

SO ORDERED.